IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SHARRON DENISE ROCKINGHAM                                    PLAINTIFF

VS.                                        CIVIL ACTION NO.  3:20-cv-94-DPJ-FKB

ANDREW SAUL, COMMISIONER
OF SOCIAL SECURITY                                            DEFENDANT

## REPORT AND RECOMMENDATION

### I.  Introduction

Sharron Denise Rockingham filed a claim for supplemental security income ("SSI")

payments with the Social Security Administration ("SSA") on March 13, 2017, alleging an onset

date of October 25, 2016.  [11] at 175.  After her application was denied initially and upon

reconsideration, she requested and was granted a hearing, which was held on June 18, 2019,

before an administrative law judge ("ALJ").  *Id.* at 51-81.  On July 10, 2019, the ALJ issued a

decision finding that Rockingham was not disabled.  *Id.* at 32-45.  The Appeals Council denied

review.  *Id.* at 6-9.  Although Plaintiff was assisted by a non-attorney representative during the

administrative proceedings, she is now proceeding *pro se* in this appeal brought pursuant to §

205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The parties have filed their briefs, and this matter is ripe for review.  *See* [13], [15], [16].

Having considered the memoranda of the parties and the administrative record, the undersigned

recommends that the Commissioner's Motion to Affirm [15] be granted.

### II.  Facts and Evidence

Rockingham was born on February 15, 1974, and she was 45 years old at the time of the

ALJ's decision.  *Id.* at 45, 175.  Rockingham reported that she attended the twelfth grade, but did

not graduate. *Id.* at 381.[1]  At the June 2019 hearing before the ALJ, she reported that she was attending nursing school three hours a day, four days a week. *Id.* at 69, 445.  She also testified that she was taking a GED class. *Id.* at 69.  Her past relevant work was as a cashier at Popeye's and a sales assistant at Walmart. *Id.* at 59, 62.  She testified that she babysat for a year and five months beginning in 2018, but the ALJ concluded that her wages were not sufficient to constitute substantial gainful activity. *Id.* at 60.

In her March 2017 application, Rockingham alleged that she was disabled because of major depression. *Id.* at 199.  At her June 2019 hearing, she testified that she lost her jobs at Popeye's and Walmart due to her inability to get along with people, and that she had problems with anger. *Id.* at 61-62.  She testified that she occasionally hears voices and is dealing with grief issues related to the deaths of her father and brother. *Id.* at 65-66.  She related that all she wants to do is stay in bed, she has feelings of anxiety, and her medications make her sleep all the time. *Id.* at 66-68.  However, even on bad days, she still goes to school. *Id.* at 74.  At the hearing, she testified that she has obstructive sleep apnea, but that she cannot afford a c-pap machine for treatment of the condition. *Id.* at 70-71.  She also stated that she can prepare her own meals, although she prefers not to; she does her own grocery shopping; and she attends to her personal hygiene and care. *Id.* at 73-74.  She stated that she is able to drive. *Id.* at 58. She reported that she smokes, but does not use alcohol. *Id.* at 401.

After complaining to doctors of bilateral hand pain and paresthesia in January 2019, she underwent a right-hand, carpal tunnel release in March 2019. *Id.* at 385, 405.  During that time, she reported to doctors that she had no history of depression, mood swings, or suicidal thoughts.

[1] At the hearing, she testified that the highest grade she completed was the eleventh grade. *Id.* at 58.

2

*Id.* at 387, 402.  At a follow-up visit in April 2019, the doctor noted that her right-hand sensation

was intact, "2+ radial pulse, AROM flexion/extension of wrist and fingers intact, stable wound

dehiscense[,] no drainage or erythema, no other signs of infection."  *Id.* at 465.  By May 2019,

her incision was well-healed, with no infection, and her right hand was neurovascularly intact.

*Id.* at 466.

Medical records substantiate that she has sought treatment for depression from Hinds

Behavioral Health Services on a regular basis since June 2017.[2]  *Id.* at 299.  She was treated by

therapists and a psychiatrist, Jeffrey Ali, M.D.  *Id.* at 299-308; 313-314; 364-382; 423-426.  At

her initial evaluation, therapists diagnosed her with major depression disorder, severe, without

psychotic features.  *Id.* at 304.  At her July 18, 2017, initial psychiatric evaluation by Dr. Ali, she

denied any legal history and any history of sexual molestation, but she reported voluntary

intercourse at age 14 and a history of depression.  *Id.* at 306-308.  She appeared calm and

cooperative with good eye contact.  *Id.* at 308.  She also denied being suicidal or homicidal, and

she denied experiencing auditory or visual hallucinations, but reported that her mood was down.

*Id.*  After a course of counseling and drug therapy, she denied in October 2018 auditory or visual

hallucinations, as well as thoughts of suicide or homicide, and she reported to Dr. Ali that her

mood was great.  *Id.* at 425.  In March 2019,[3] she interacted well with Dr. Ali, and he noted that

she smiled readily, looked relaxed, and was alert and oriented.  *Id.* at 423.  Dr. Ali further noted

that she had fluent and coherent thoughts, no dysarthria or aphasia, a "so-so mood," a bright

---

[2] Although she reported prior mental health treatment without hospitalization at both Jackson Mental Health Center and Jackson-Hinds Comprehensive Health Center ("JHCHC"), there are no records of that treatment in the administrative record.  *Id.* at 302, 306.  She reported that she was treated at JHCHC by an unnamed therapist and a psychiatrist, Dr. Bridget Smith, from June 2016 to May 2017, at which time she was referred to Hinds Behavioral Health Services.  *Id.*
[3] The most recent treatment notes in the record are from March 2019.  *Id.* at 423.

affect, and no evidence of confusion, but had questionable judgment and limited insight. *Id.* In response to her reports of having problems sleeping, Dr. Ali referred her to a clinic for a sleep consultation study. *Id.* at 423, 425.

Randy S. Burke, Ph.D., performed a one-time comprehensive mental status evaluation of Rockingham on August 22, 2017, barely one month after her initial evaluation by Dr. Ali. *Id.* at 309-311. At that time, she reported that she experienced feelings of depression and was socially isolated and irritable. *Id.* at 309. She reported "being abused as a child and raped as an adult," and that she thinks about those events all the time. *Id.* She reported that her aggression caused her to lose jobs and that she would become physically aggressive toward co-workers. *Id.* at 310. She reported that she wakes up about 6:30 a.m., but then returns to bed. *Id.* She reported no other daily activities, but stated that she could feed herself, bathe, and use the toilet independently. *Id.* She described that she had been arrested about four or five times for shoplifting and fighting, but was not on probation or parole. *Id.* She reported some hallucinations with voices, with delusional thinking. *Id.* at 311. Burke diagnosed her with post-traumatic stress disorder; major depressive disorder, single episode, moderate; and unspecified schizophrenia spectrum and other psychotic disorder. *Id.*

### III.  The Decision of the ALJ

In evaluating Plaintiff's claim, the ALJ worked through the familiar sequential evaluation process for determining disability.[4] The ALJ found that Rockingham has the severe impairments

---

[4] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

of bilateral carpal tunnel syndrome, major depression, and sleep apnea.  *Id.* at 34.  The ALJ

concluded that she has the non-severe mental impairments of post-traumatic stress disorder and

unspecified schizophrenia spectrum and other psychotic disorder.  *Id.* at 35.  The ALJ observed

that the consultative examiner had diagnosed these non-severe mental impairments, but pointed

out that the consultative examiner's findings were inconsistent with other medical evidence and

based only on Rockingham's subjective history.  *Id.*

After considering the record, the ALJ concluded that Plaintiff does not have an

impairment or combination of impairments of Listing severity.  *Id.*; *see also* 20 C.F.R. Part 404,

Subpart P, App. 1.  In particular, the ALJ examined Listing 11.14 for bilateral carpal tunnel

syndrome and Listing 12.04 for mental impairments.  *Id.* at 35.  After a detailed examination of

the "paragraph B" criteria of Listing 12.04, the ALJ determined that her mental impairments do

not cause at least two "marked" limitations or one "extreme" limitation, therefore "paragraph B"

criteria were not satisfied.  *Id.* at 36.

With the entire record in mind, the ALJ concluded that Rockingham has the residual

functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c),

---

(3)      whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404,
Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)      whether the impairment prevents the claimant from doing past relevant work (if not, the claimant
is found to be not disabled); and

(5)      whether the impairment prevents the claimant from performing any other substantial gainful
activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.
The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in
sustaining her burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*,
67 F.3d 558, 564 (5th Cir. 1995).

except she can frequently handle and finger bilaterally. *Id.* at 37. The ALJ concluded that Rockingham is able to understand, remember, and carry out instructions to perform simple, routine tasks. *Id.* She is limited to occasional interaction with coworkers, supervisors, and the general public. *Id.* The ALJ determined that Plaintiff can sustain concentration and persistence for two-hour periods at a time, and she can only make simple work-related decisions. *Id.* She may be occasionally exposed to workplace hazards such as moving mechanical parts and high exposed places. *Id.* Considering this reduced spectrum of medium work, the ALJ determined that Rockingham is unable to perform any past relevant work. *Id.* at 43.

Classifying Rockingham as a "younger individual" with a limited education and unskilled past relevant work, the ALJ looked to a vocational expert for assistance to determine whether other jobs exist that Plaintiff can perform, given her RFC. *Id.* at 44. After listening to Rockingham's testimony and consulting the records, the vocational expert testified that Plaintiff can perform the requirements of the following three jobs:

1. Store laborer, classed as medium, with an SVP of 2;

2. Laundry worker, classed as medium, with an SVP of 2; and

3. Cleaner, classed as medium, with an SVP of 2.

Based on the vocational expert's testimony, and considering the other evidence in the record, the ALJ concluded that Rockingham has not been under a disability since March, 13, 2017, the date of her application, to July 10, 2019, the date of the decision. *Id.* at 44-45.

## IV. Standard of Review

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v.*

*Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

## V. Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded because she has severe depression. [13] at 2. She also argues that she has been diagnosed with post-traumatic stress disorder, major depression disorder, single episode, moderate, and unspecified schizophrenic spectrum. *Id.* Echoing the consultative examiner's assessment, she asserts that these conditions would have a severe negative impact on her ability to function in the workplace. *Id.* She also argues that her sleep apnea and carpal tunnel syndrome prevent her from working. *Id.* at 3.

7

As stated above, the court must refrain from re-weighing the evidence. "[T]he task of weighing the evidence is the province of the ALJ. [The court's] job is merely to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision." *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The undersigned has carefully examined the entire record and finds that the ALJ's decision is supported by substantial evidence.

In this case, the ALJ looked beyond the opinion of the consultative examiner to the body of the record. Rockingham's mental health treatment records demonstrate that she consistently sought treatment and showed improvement. When the ALJ gave "little weight" to the opinion of the consultative psychologist, she pointed out the inconsistencies between the record evidence of two years of treatment by Plaintiff's treating psychiatrist versus Burke's one-time examination, which relied heavily on Plaintiff's subjective narrative. [11] at 42. The ALJ considered the effectiveness of Plaintiff's medications and the lack of inpatient treatment for her mental conditions. The ALJ reviewed the medical records related to Plaintiff's carpal tunnel syndrome and observed that she had recovered well from surgery. *Id.* at 41. As for Plaintiff's obstructive sleep apnea, the ALJ observed that Rockingham had failed to return to the sleep clinic for follow-up treatment. *Id.* The ALJ also pointed out inconsistencies in Rockingham's testimony and reports to mental health care professionals regarding her ability to drive, daily activities, interactions with others, legal issues, and past alleged traumatic events.

In sum, "the evidence presents conflicting testimony and reports that must be evaluated by their credibility. The Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." *Chaparro v. Bowen*, 815 F.2d 1008,

1010-1011 (5th Cir. 1987).  As in *Chaparro*, the Court finds "nothing to criticize in how the Secretary weighed the evidence and determined the case."  *Id.* at 1011.  Accordingly, the ALJ's decision is supported by substantial evidence, and no reversible error exists.

## VI.  Conclusion

For the reasons stated above, the undersigned recommends that the Commissioner's decision be affirmed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 30th day of July, 2021.

 /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE